1
2
3
4
5

6            UNITED STATES DISTRICT COURT

7            EASTERN DISTRICT OF CALIFORNIA

8

9  DANIEL L. REAM,                    )    New Case No.
                                      )    1:05-cv-1576 TAG
10              Plaintiff,            )
                                      )    SCHEDULING CONFERENCE ORDER
11     v.                            )    AND ORDER TRANSFERRING CASE
                                      )    TO MAGISTRATE JUDGE
12  COUNTY OF KERN, KERN COUNTY       )
    SHERIFF'S DEPARTMENT, DEPUTY      )    Discovery Cut-Off: 1/29/07
13  JAMES NEWELL, SHERIFF MACK        )
    WIMBISH, AND DOES 1 TO 100        )    Non-Dispositive Motion
14  INCLUSIVE,                        )    Filing Deadline: 2/15/07
                                      )
15              Defendants.           )    Dispositive Motion Filing
                                      )    Deadline:  2/28/07
16  _____  )
                                           Settlement Conference Date:
17                                         2/8/07 9:00 Ctrm. 8, Fresno

18                                         Pre-Trial Conference Date:
                                           5/16/07 10:00 Bakersfield
19
                                           Trial Date: 6/26/07 9:00
20                                         Bakersfield (JT-7 days)

21

22  I.   Date of Scheduling Conference.

23       April 6, 2006.

24  II.  Appearances Of Counsel.

25       Rodriguez & Associates by Charles R. Chapman, Esq., appeared

26  on behalf of Plaintiff.

27       Andrew C. Thomson, Esq., Deputy County Counsel, appeared on

28  behalf of Defendants.

                            1

III.   Summary of Pleadings.

   Plaintiff's Factual and Legal Contentions

   1.   On or about December 20, 2004, Plaintiff Daniel Ream was operating a 1986 Buick Century on Bodfish Canyon Road in Bodfish, California.  At said time and place, Defendant Newell conducted a traffic stop on the vehicle being operated by Plaintiff Daniel Ream.  Daniel Ream had violated no law, ordinance or regulation.  Deputy Newell did not have any probable cause to effectuate this traffic stop.  Defendant Newell did not have any probable cause to believe that a traffic violation had occurred nor did he have any reasonable basis to suspect that Plaintiff Daniel Ream had been involved in any criminal activity.

   2.   Upon stopping Plaintiff Daniel Ream's vehicle, Defendant Newell proceeded to arrest Daniel Ream.  Defendant Newell did not have any probable cause to arrest Daniel Ream.  Defendant Newell did not have any warrant for the arrest of Plaintiff Daniel Ream.  The traffic stop, detention and arrest of Plaintiff was pretextual and done for the purpose of harassing and retaliating against Plaintiff.

   3.   In the process of arresting Plaintiff, taking Plaintiff into custody and transporting Plaintiff to the Sheriff's substation, Defendant Newell used excessive and unreasonable force.  Plaintiff Daniel Ream's wrists were handcuffed behind his back by Defendant Newell.  In so doing, Defendant Newell unreasonably fastened the handcuffs so tight as to cause Plaintiff Daniel Ream physical pain and injury.  Defendant Newell forcefully placed Plaintiff Daniel Ream into the rear of the police car, in such a manner that Plaintiff Daniel Ream's weight

**2**

was pressed down on his wrists and handcuffs, causing Plaintiff Daniel Ream additional pain and injury.  Defendant Newell and/or Does 1-100, refused repeated requests by Plaintiff Daniel Ream at the scene of the arrest, during transport and/or at the Sheriff's substation, to adjust the handcuffs because of the pain and injury they were causing.

4.   As a direct and proximate result of the acts and omissions by Defendant Newell and Does 1-100, Plaintiff Daniel Ream suffered physical injuries to his body, and in particular to his wrist, hand and arm, which caused him: (a) great physical pain and suffering; (b) great mental pain; (c) to incur medical expenses; (d) to incur lost past, present and future earnings, and (e) to suffer physical, mental, and emotional pain, suffering and/or disability in the future.

5.   The stopping of Plaintiff's vehicle, Plaintiff's detention and warrantless arrest, and the use of excessive force in arresting Plaintiff was unlawful and objectively unreasonable because, inter alia, Defendant Newell and Does 1-100 were not in possession of any facts that would reasonably cause them to believe that: (1) Plaintiff had violated any traffic ordinance; (2) Plaintiff was involved in any criminal activity; and/or (3) Plaintiff was a danger to Defendant Newell or the general public.

**Plaintiff's Factual Issues**:

1.   Whether Deputy James Newell had probable cause to effectuate this traffic stop.

2.   Whether Deputy James Newell had probable cause to believe that a traffic violation had occurred or if he had any reasonable basis to suspect that Plaintiff Daniel Ream had been

1  involved in any criminal activity.

2      3.    Whether Deputy James Newell had probable cause to
3  arrest Daniel Ream.

4      4.    Whether the traffic stop, detention and arrest of
5  Plaintiff was pretextual and done for the purpose of harassing
6  and retaliating against Plaintiff.

7      5.    Whether Deputy James Newell used excessive and
8  unreasonable force.

9      6.    Whether Deputy James Newell unreasonably fastened the
10 handcuffs so tight as to cause Plaintiff Daniel Ream physical
11 pain and injury.

12     7.    Whether Deputy James Newell forcefully placed Plaintiff
13 Daniel Ream into the rear of the police car, in such a manner
14 that Plaintiff Daniel Ream's weight was pressed down on his
15 wrists and handcuffs, causing Plaintiff Daniel Ream additional
16 pain and injury.

17     8.    Whether Deputy James Newell and/or Does 1-100, refused
18 repeated requests by Plaintiff Daniel Ream at the scene of the
19 arrest, during transport and/or at the Sheriff's substation, to
20 adjust the handcuffs because of the pain and injury they were
21 causing.

22     **Plaintiff's Legal Contentions**:

23     1.    Defendant County of Kern, Defendant Kern County
24 Sheriff's Department ("KCSD"), Defendant Wimbish and Does 1-100,
25 inclusive, and each of them, are responsible for implementing,
26 maintaining, sanctioning and/or condoning a policy, custom or
27 practice under which Defendant Newell and other Defendants
28 committed the aforementioned illegal or wrongful acts.

**4**

1  Defendants, and each of them, maintained or permitted an official

2  policy or custom of knowingly permitting the occurrence of the

3  type of wrong set forth above, and based upon the principles set

4  forth herein.

5       2.   Defendant County of Kern, Defendant KCSD, Defendant

6  Wimbish and Does 1-100 were objectively deliberately indifferent,

7  as elucidated in, e.g., *Farmer v. Brennan*, 511 U.S. 825, 841, 14

8  S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994), *City of Canton, Ohio v.*

9  *Harris*, 489 U.S. 378, 396, 109 S.Ct. 1197, 1208, 103 L.Ed.2d 412

10  (1989) (O'Connor, J., concurring in part, dissenting in part),

11  and *Gibson v. County of Washoe*, 290 F.3d 1175, 1198, n.1 (9th

12  Cir. 2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872, 154

13  L.Ed.2d 775 (2003), to: (a) the practice of members of Defendant

14  Kern County Sheriff's Department of making unlawful traffic

15  stops, (b) the practice of members of Defendant Kern County

16  Sheriff's Department making unlawful arrests without probable

17  cause or warrant, (c) the practice of members of Defendant Kern

18  County Sheriff's Department in using excessive and, objectively

19  unreasonable, force against suspects and members of the public,

20  and in particular the use of excessive and unreasonable force in

21  the handcuffing of persons; and (d) Plaintiff's rights under the

22  Fourth Amendment to be safe and secure in his person.

23       3.   Defendant County of Kern, Defendant KCSD, Defendant

24  Wimbish, and Does 1-100 had actual and/or constructive knowledge,

25  as elucidated in, e.g., *Farmer v. Brennan*, 511 U.S. 825, 841, 114

26  S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994), *City of Canton, Ohio v.*

27  *Harris*, 489 U.S. 378, 396, 109 S.Ct. 1197, 1208, 103 L.Ed.2d 412

28  (1989) (O'Connor, J., concurring in part, dissenting in part),

**5**

1   and *Gibson v. County of Washoe*, 290 F.3d 1175, 1186 (9th Cir.

2   2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d

3   775 (2003), that it was: (a) the practice of members of Defendant

4   Kern County Sheriff's Department to make unlawful traffic stops,

5   (b) the practice of members of Defendant Kern County Sheriff's

6   Department to make unlawful arrests without probable cause or

7   warrant, and/or (c) the practice of members of Defendant Kern

8   County Sheriff's Department to use excessive, and objectively

9   unreasonable force against suspects and members of the public,

10  and in particular use excessive and unreasonable force in the

11  handcuffing of persons.

12       4.   Defendant County of Kern, Defendant KCSD, Defendant

13  Wimbish, and Does 1-100 had actual and/or constructive knowledge,

14  as elucidated in, e.g., *Farmer v. Brennan*, 511 U.S. 825, 841, 114

15  S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994), *City of Canton, Ohio v.*

16  *Harris*, 489 U.S. 378, 396, 109 S.Ct. 1197, 1208, 103 L.Ed.2d 412

17  (1989) (O'Connor, J., concurring in part, dissenting in part),

18  and *Gibson v. County of Washoe*, 290 F.3d 1175, 1186 (9th Cir.

19  2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d

20  775 (2003), that their policies regarding the discipline of

21  deputies accused of the aforementioned conduct, and/or other

22  violations of the Fourth Amendment were so inadequate that it was

23  obvious that a failure to correct them would result in further

24  similar incidents and violations of the Fourth Amendment.

25       5.   Plaintiff believes, and upon such belief, alleges that

26  Defendant County of Kern, Defendant KCSD, Defendant Wimbish, and

27  Does 1-100, and each of them, are responsible for implementing,

28  maintaining, sanctioning and/or condoning a policy, custom or

1  practice under which Defendant Newell and Does 1-100, committed
2  the aforementioned illegal or wrongful acts.  Plaintiff believes
3  that the conduct of the Deputies of Defendant KCSD and, more
4  specifically, the acts of Defendant Newell and Does 1-100, were
5  consistent with the training and the policies set forth by
6  Defendant County of Kern, Defendant KCSD and Defendant Wimbish,
7  in that such conduct is ratified by Defendant County of Kern,
8  Defendant KCSD, and Defendant Wimbish.

9       6.   Acting under color of law and pursuant to official
10  policy, practice and custom, Defendant County of Kern, Defendant
11  KCSD, Defendant Wimbish, and Does 1-100 intentionally, knowingly,
12  recklessly, and/or with objective deliberate indifference failed
13  to instruct, supervise, train, control and discipline, on a
14  continuing basis, members of Defendant KCSD in their duties to
15  refrain from violating the Fourth Amendment by: (1) making
16  unlawful traffic stops, (2) making false arrests and/or (3) using
17  excessive and unreasonable force.

18       7.   Plaintiff has a right to substantive due process
19  pursuant to the Fourth Amendment to the United States
20  Constitution.  That right has been violated by Defendants, and
21  each of them, as a result of their failure to train, supervise
22  and discipline members of Defendant KCSD.

23       8.   As a direct and proximate result of the acts and
24  omissions of Defendant County of Kern, Defendant KCSD, Defendant
25  Newell, Defendant Wimbish and Does 1-100, inclusive, Plaintiff
26  was deprived of his right to be free from an unlawful search and
27  seizure, as well as his right to be free from the imposition of
28  excessive and objectively unreasonable force.  By reason of the

7

1  Defendants', and each of their, conduct Plaintiff was denied his

2  rights to substantive due process, in violation of his rights

3  under the laws and Constitution of the United States, in

4  particular the Fourth Amendment and 42 U.S.C. § 1983.  Plaintiff

5  is entitled to recover damages pursuant to 42 U.S.C. § 1983 and

6  California Civil Code § 52.1.

7       9.   As a direct and proximate result of the acts and

8  omissions of Defendant County of Kern, Defendant KCSD, Defendant

9  Newell, Defendant Wimbish, and Does 1-100, inclusive, Plaintiff

10  suffered general and special damages as described hereinabove in

11  an amount according to proof at trial.

12       10.   In performing the acts alleged above, the individual

13  Defendant Newell and Does 1-100, inclusive, acted recklessly,

14  with callous indifference, and in the face of a perceived risk

15  that their actions would violate Plaintiff's rights under the

16  Fourth Amendment to be secure in his person.  As a result,

17  Plaintiff requests that said individual Defendants each be

18  required to pay damages by way of example and punishment.

19       11.   Pursuant to the provisions of 42 U.S.C. § 1983 and

20  California Civil Code § 52.1, Plaintiff is entitled to and

21  demands an award of reasonable attorney fees and costs attendant

22  to prosecuting this cause of action in an amount to be determined

23  according to proof after trial.

24       12.   Defendants Newell and Does 1-100, and each of them,

25  owed a duty to Plaintiff to avoid causing him to be subject to

26  being placed in fear of force used against his person without

27  cause or provocation or sufficient investigation.

28       13.   Defendants Newell and Does 1-100, and each of them,

**8**

1  breached their duty to Plaintiff by negligently, carelessly,

2  recklessly and/or intentionally causing Plaintiff to be

3  physically touched and injured.  Plaintiff was improperly and

4  unreasonably put in fear of physical touching and/or was

5  unreasonably touched and assaulted by law enforcement officers of

6  the Kern County Sheriff's Department including, but not limited

7  to, Defendant Newell and Does 1-100.

8      14.  Defendants Newell and Does 1-100, and each of them,

9  used threats, force, unwanted touching and violence upon

10  Plaintiff on and about his body in a willful, malicious,

11  reckless, negligent and unlawful manner and without just cause or

12  provocation and with the intent to do bodily harm and/or with the

13  conscious disregard of the consequences to Plaintiff, thereby

14  causing his severe injuries for which Plaintiff has a claim.

15      15.  In doing the acts alleged above, Defendants Newell and

16  Does 1-100, and each of them, acted with the intent to make

17  contact with Plaintiff's person.

18      16.  At no time did Plaintiff consent to any of the acts of

19  Defendants alleged above.

20      17.  As a direct and proximate result of the acts and

21  omissions of Defendants, and each of them, Plaintiff suffered

22  severe physical and emotional injuries and general and special

23  damages as alleged hereinabove.

24      18.  In performing the acts alleged above, the individual

25  Defendants, Defendant Newell and Does 1-100, inclusive, acted

26  with malice within the meaning of California Civil Code § 3294

27  because they engaged in despicable conduct which was carried out

28  by them with a willful and conscious disregard of the rights or

9

safety of others, including Plaintiff.  In addition, the
individual Defendants were guilty of oppression within the
meaning of California Civil Code § 3294 because they engaged in
despicable conduct that subjected persons, including Plaintiff,
to cruel and unjust hardship in conscious disregard of their
rights.  Therefore, pursuant to California law, Plaintiff seeks
exemplary damages in the maximum amount allowed by law and
sufficient to serve the purposes of such damages for the conduct
giving rise to this cause of action and to deter such conduct in
the future.

19.  By the acts and omissions of Defendants Newell and Does
1-100, inclusive, and each of them, as set forth hereinabove,
Plaintiff was caused to be confined of his person and deprived of
his liberty.

20.  The confinement and restraint of Plaintiff by
Defendants Newell and Does 1-100, and each of them was without
proper complaint or authority.

21.  As a direct and proximate result of the acts and
omissions of Defendants, and each of them, Plaintiff suffered
severe physical and emotional injuries and general and special
damages as alleged hereinabove.

22.  In performing the acts alleged above, the individual
Defendants, Defendant Newell and Does 1-100, inclusive, acted
with malice within the meaning of California Civil Code § 3294
because they engaged in despicable conduct which was carried out
by them with a willful and conscious disregard of the rights or
safety of others, including Plaintiff.  In addition, the
individual Defendants were guilty of oppression within the

meaning of California Civil Code § 3294 because they engaged in despicable conduct that subjected persons, including Plaintiff, to cruel and unjust hardship in conscious disregard of their rights.   Therefore, pursuant to California law, Plaintiff seeks exemplary damages in the maximum amount allowed by law and sufficient to serve the purposes of such damages for the conduct giving rise to this cause of action and to deter such conduct in the future.

23.   Defendant Newell negligently and carelessly carried out his duties in the manner in which he handled the aforementioned traffic stop, detention and arrest of Plaintiff Daniel Ream. Defendant Newell was not in possession of any facts that would reasonably cause him to believe that Plaintiff was subject to detention and/or arrest.   Defendant Newell negligently and carelessly used an excessive amount of force against Plaintiff's will and without reasonable cause in the manner in which he handcuffed Plaintiff and placed him into the patrol vehicle. Defendant Newell negligently and carelessly refused to loosen the handcuffs when repeatedly requested to do so by Plaintiff because of the injury and pain being caused by the handcuffs and the manner in which Plaintiff was placed in the patrol vehicle.

24.   Defendants County of Kern, Kern County Sheriff's Department, Mack Wimbish and Does 1-100, and each of them, and their employees and/or agents, did negligently, carelessly and/or recklessly conduct themselves so as to permit Plaintiff to suffer an unwanted touching and otherwise failed and/or refused to remove or loosen the handcuffs on Plaintiff's wrists while Plaintiff was within their custody, thereby directly and

11

1   proximately causing Plaintiff's injuries.

2       25.   Plaintiff alleges that Defendants, County of Kern, Kern

3   County Sheriff's Department, Mack Wimbish and Does 1-100, and

4   each of them, acted negligently and carelessly in that they

5   failed to properly direct, control, maintain and supervise the

6   duties and activities of their Deputies, including but not

7   limited to Defendant Newell, in order to prevent unlawful

8   detentions, assaults, unwanted touching, harassment and the use

9   of unreasonable physical force on persons without cause or

10  provocation.

11      26.   The negligence on the part of Defendants County of

12  Kern, Kern County Sheriff's Department, Mack Wimbish and Does 1-

13  100, and each of them, is not limited to those aforementioned

14  negligent acts or omissions on the part of the known and unknown

15  public employees, but also includes the negligent hiring,

16  retaining, appointing, selecting, training, disciplining and/or

17  supervising of their employees and/or agents.

18      27.   As a direct and proximate result of the foregoing acts

19  and omissions of Defendants, and each of them, Plaintiff suffered

20  severe physical and emotional injuries, general and special

21  damages as alleged hereinabove.

22      28.   Pursuant to the provisions of 42 U.S.C. § 1988,

23  Plaintiff is entitled to and demands an award of reasonable

24  attorneys' fees and costs attendant to prosecuting this action in

25  an amount to be determined according to proof at trial.

26      **Defendants' Factual and Legal Contentions**:

27      1.   On or about December 20, 2004, at or around 7:58 p.m.,

28  Kern County Sheriff's Deputy James Newell (hereinafter "Newell"),

12

1  in the course of his employment, was operating a marked patrol

2  vehicle on Lake Isabella Boulevard.  At that time Plaintiff

3  Daniel Ream (hereinafter "Plaintiff") was operating a 1986 Buick

4  Century on Bodfish Canyon Road in Bodfish, California.  Newell

5  witnessed Plaintiff begin to slow his vehicle for a posted stop

6  sign as the vehicle approached the intersection of the two roads.

7  However, Plaintiff's vehicle failed to stop for the sign and

8  Newell initiated a traffic stop.

9       2.   During the traffic stop, Newell found Plaintiff to be

10  the driver of the vehicle and requested Plaintiff's driver's

11  license and registration.  Plaintiff responded that both the

12  license and registration were not in his possession but were at

13  his residence.  When Plaintiff determined that Newell could check

14  on his license by a radio call, Plaintiff conceded that his

15  license was suspended.  The suspension was confirmed by Newell

16  during the radio check and Plaintiff was informed that he was

17  going to be arrested.  Plaintiff exited his vehicle and began to

18  speak with Newell.  During this conversation Newell noticed that

19  Plaintiff "displayed objective symptoms of central nervous system

20  stimulant use."

21       3.   Newell checked Plaintiff for drug use and noticed that

22  Plaintiff had extremely constricted pupils for the lighting

23  conditions, his speech was very fast and Plaintiff was stuttering

24  his words.  Plaintiff had difficulty maintaining control of his

25  hands and fingers, and Plaintiff was unable to stand still.

26  During the testing, Newell also noticed that Plaintiff had

27  difficulty estimating time (estimated thirty seconds had passed

28  while seventy-seven seconds had passed).  Plaintiff had a visible

1  body sway and had a pulse rate of one hundred twenty beats per
2  minute.

3      4.    During the discussion Plaintiff volunteered that "I
4  know what it looks like, but Albuterol is the same as
5  methamphetamine."  Plaintiff also informed Newell that "[m]y
6  doctor told me that Albuterol was a prescription version of
7  methamphetamine and it displayed the same symptoms of being under
8  the influence of meth."

9      5.    Newell placed Plaintiff in handcuffs and transported
10 him to the Kern Valley Substation for further evaluation.  After
11 arrival at the substation, Newell completed a drug evaluation
12 worksheet on Plaintiff.  Newell additionally obtained a sample of
13 Plaintiff's urine which was placed in a drug urine kit and later
14 forwarded to the District Attorney's Crime Laboratory for
15 analysis.  That same evening Plaintiff was released from the
16 substation on his promise to appear.  The District Attorney's
17 Toxicology Report indicated that the specimen was positive for
18 amphetamines.

19     6.    On or about April 20, 2005, the charges of being under
20 the influence, driving on a suspended license and having no proof
21 of insurance were dismissed in the "furtherance of justice" when
22 Plaintiff pleaded guilty to failing to stop at a stop sign.

23     7.    Newell had probable cause to stop the vehicle since
24 Plaintiff pleaded guilty to the traffic violation.  Newell also
25 had probable cause to take Plaintiff into custody based upon the
26 testing for drugs and the urine sample evidence.  At no time
27 during the process of taking Plaintiff into custody and
28 transporting him to the substation did Newell use excessive force

**14**

on Plaintiff, especially since there appeared to be no confrontation or animosity between Newell and Plaintiff.  At no point during the evening was Newell aware that Plaintiff believed that the handcuffs were too tight nor was any such pain ever articulated to him.

8.   Was Plaintiff subjected to a use of force greater than the amount necessary to take him into custody and place him in restraints?

Defendants' Factual Issues:

1.   Does Deputy Newell have qualified immunity.

2.   Had Plaintiff attempted to evade law enforcement personnel on prior occasions.

3.   Had Plaintiff failed to appear at court hearings as promised.

4.   Did Plaintiff file a California Tort Claims Act claim with the County of Kern.

5.   Does Kern County Sheriff Mack Wimbish have immunity.

6.   Did Kern County Sheriff Mack Wimbish personally participate in the incident.

7.   Did Kern County Sheriff Mack Wimbish professionally participate in the incident.

8.   Was the complaint timely filed or is it barred by the applicable statute of limitations.

9.   Has Plaintiff attempted to mitigate his injuries.

10.  Does Plaintiff's statement of the issues attempt to improperly enlarge the claims and allegations contained in the complaint.

///

15

1      **Defendants' Legal Contentions**:

2      1.   Defendants do not believe that Plaintiff was subjected

3   to excessive force but provide this section pursuant to the

4   court's request.   Inquiries of excessive force claims must begin

5   with recognition of the extreme difficulty and danger of police

6   work: "The calculus of reasonableness must embody allowance for

7   the fact that officers are often forced to make split-second

8   judgments - in circumstances that are tense, uncertain, and

9   rapidly evolving - about the amount of force that is necessary in

10  a particular situation."   *Graham v. Conner*, 490 U.S. 386, 109

11  S.Ct. 1865, 1881 (1989); see also *Roy v. Inhabitants of Lewiston*,

12  42 F.3d 691, 695 (1st Cir. 1994) ("whether substantive liability

13  or qualified immunity is at issue, the Supreme Court intends to

14  surround the police who make these on-the-spot [deadly force

15  decisions] in dangerous situations with a fairly wide zone of

16  protection in close cases").   The Supreme Court has emphasized

17  that this "deference to the judgment of the officer on the scene"

18  is required as to the merits of a Fourth Amendment excessive

19  force claim in addition to the deferential standard of qualified

20  immunity.   *Saucier, supra*, 533 U.S. at 205, 206.

21      2.   A Fourth Amendment claim of excessive force is analyzed

22  under the framework outlined by the Supreme Court in *Graham v.*

23  *Connor*, 490 U.S. 386, 104 L.Ed.2d 443, 109 S.Ct. 1865 (1989).

24  All claims that law enforcement officers have used excessive

25  force in the course of an arrest must be analyzed under the

26  Fourth Amendment and its "reasonableness" standard.   *See Graham*

27  *v. Connor*, 490 U.S. at 395; *Ward v. City of San Jose*, 967 F.2d

28  280, 284 (9th Cir. 1992).

**16**

1    3.   "It is clear that under *Graham*, excessive force claims

2 arising before or during arrest are to be analyzed exclusively

3 under the Fourth Amendment's reasonableness standard. . ." *Reed*

4 *v. Hoy*, 909 F.2d 324, 329 (9th Cir. 1989), *cert. denied*, 501 U.S.

5 1250, 115 L.Ed.2d 1053, 111 S.Ct. 2887 (1991).  The *Graham*

6 analysis requires balancing the "nature and quality of the

7 intrusion" on a person's liberty with the "countervailing

8 governmental interests at stake" to determine whether the use of

9 force was objectively reasonable under the circumstances.

10 *Graham*, 490 U.S. at 396.

11    4.   The Supreme Court has said that "the 'reasonableness'

12 inquiry in an excessive force case is an objective one: the

13 question is whether the officer's actions are 'objectively

14 reasonable' in light of the facts and circumstances confronting

15 them[.]"  *Graham*, 490 U.S. at 397.  "The question is not simply

16 whether the force was necessary to accomplish a legitimate police

17 objective; it is whether the force used was reasonable in light

18 of all the relevant circumstances."  *Hammer v. Gross*, 932 F.2d at

19 846.

20    5.   In *Graham*, the Supreme Court indicated that relevant

21 factors in the Fourth Amendment reasonableness inquiry include

22 "[1] the severity of the crime at issue, [2] whether the suspect

23 poses an immediate threat to the safety of the officers or

24 others, and [3] whether he is actively resisting arrest or

25 attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

26 The Court did not, however, limit the inquiry to those factors.

27 "Because the test of reasonableness under the Fourth Amendment is

28 not capable of precise definition or mechanical application," the

17

1   reasonableness of a seizure must instead be assessed by carefully

2   considering the objective facts and circumstances that confronted

3   the arresting officers.  *Graham*, 490 U.S. at 396.

4        6.   The determination of qualified immunity involves a two-

5   part analysis: "1) Was the law governing the official's conduct

6   clearly established? 2) Under that law, could a reasonable

7   officer have believed the conduct was lawful?" (*Act up! Portland*

8   *v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993)).  Newell is

9   entitled to qualified immunity unless Plaintiff can establish

10  that (1) he lacked probable cause to believe that Plaintiff posed

11  a threat of injury or death and (2) that no reasonable officer,

12  confronting the same circumstances, could believe his use of

13  force was lawful.

14       7.   As to qualified immunity, the question is not whether

15  the conduct is clearly constitutional, but whether it is clearly

16  unconstitutional.  *Knox v. McGinnis*, 998 F.2d 1405, 1409-10 (7th

17  Cir. 1993).

18       8.   Qualified immunity is not a defense on the merits, but

19  an "entitlement not to stand trial."  It may be overcome only by

20  a showing that 1) a constitutional right was in fact violated,

21  and 2) based on fact-specific, analogous precedents, no

22  reasonable officer could believe Defendant's actions were lawful.

23  *Saucier v. Katz*, 533 U.S. 194, 200-202, 121 S.Ct. 2151 (2001)

24  (officer must be "on notice" by pre-existing law that the alleged

25  conduct is unlawful); *Jackson v. City of Bremerton*, 268 F.3d 646,

26  651 (9th Cir. 2001); *Sorrels v. McKee*, 290 F.3d 965, 969 (9th

27  Cir. 2002).  Absent a showing that "pre-existing" law clearly

28  proscribed the use of deadly force by Benson, Benson is "presumed

18

1  to be immune from damages. . . ." *Elder v. Holloway*, 975 F.2d

2  1388, 1392 (9th Cir. 1991), *reversed on other grounds*, 114 S.Ct.

3  1019 (1994).

4      9.   The burden to overcome qualified immunity is heavy.

5  The Supreme Court has repeatedly stressed that qualified immunity

6  protects "all but the plainly incompetent or those who knowingly

7  violate the law." *Saucier*, 533 U.S. at 202 (quoting *Malley v.*

8  *Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)).  It must have

9  been "obvious" to a reasonably competent officer that the conduct

10  was unlawful. *Id.*  This deferential standard is necessary to

11  fulfill the purpose of the qualified immunity to prevent officers

12  from erring on the side of caution because they fear being used.

13  *Hunter v. Bryant*, 502 U.S. 224, 228-229, 112 S.Ct. 534 (1991);

14  *Anderson v. Creighton*, 483 U.S. 634, 638-639, 107 S.Ct. 3034

15  (1997).

16      10.   Finally, qualified immunity may not be overcome by

17  reference to Fourth Amendment principles that have doubtful or

18  unclear application to the facts of the case. *Saucier*, 533 U.S.

19  at 202-203.  The inquiry "is whether it would be clear to a

20  reasonable officer that his conduct was unlawful in the situation

21  he confronted." *Saucier*, 533 U.S. at 202.  Officers "are not

22  required to anticipate subsequent legal developments," even where

23  those developments constitute a "logical extension" of pre-

24  existing law. *Somers v. Thurman*, 109 F.3d 614, 621 (9th Cir.

25  1997).

26      11.   The United States Supreme Court has held repeatedly

27  that whether an official acts as a policy maker for a county is a

28  question of state law. *McMillian v. Monroe County, Ala.*, 520

U.S. 781, 786 (1997); *City of St. Louis v. Praprotnik*, 485 U.S.
112, 124, 126 (1988).  The Ninth Circuit Court of Appeal agreed
in *Nelson v. City of Irvine*, 143 F.3d 1196, 1206-1207 (9th Cir.
1998).  Since the California Supreme Court issued *Venegas v.
County of Los Angeles*, 32 Cal.4th 820 (2004) the issue has been
decided and federal courts are precluded from interpreting state
law and are bound to follow the California Supreme Court's
interpretation of that law in determining whether a sheriff
involved in a law enforcement function is a state or county
policymaker.  *Venegas, supra*, at 826, 839.  In *Venegas*, the
California Supreme Court made clear that a sheriff acts as a
state agent when performing law enforcement functions.  *Venegas,
supra*, at 836.

     12.  Plaintiff alleges that Wimbish, the County and the
Department negligently hired, trained, staffed and supervised.
These actions are law enforcement actions and, as a State actor,
Wimbish has absolute immunity.

     13.  Wimbish did not complete any act while in his
individual capacities that resulted in the deprivation of
Plaintiff's constitutional rights.  Plaintiff does not allege
that Defendant personally participated in any act that gave rise
to their alleged constitutional deprivation nor do they argue
that Wimbish improperly failed to act.  *Taylor v. List*, 880 F.2d
1040, 1045 (9th Cir. 1989).  Plaintiff does not contend that
Wimbish was the direct supervisor of any of the Defendants.
Plaintiff fails to identify any individual act by Wimbish, thus
Wimbish has no individual liability.

     14.  In *Monell v. Dept. of Social Services of City of New*

1   *York*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978) the Supreme Court

2   held that municipal liability pursuant to § 1983 could not be

3   based on any form of vicarious liability.  Thus, only when "a

4   government's policy or custom, whether made by its lawmakers or

5   by those whose edicts or acts may fairly be said to represent

6   official policy, inflicts the injury that the government, as an

7   entity, is liable under § 1983."  *Monell v. Dept. of Social*

8   *Services of City of New York*, at 691.

9       15.  A policy is a course of action consciously chosen among

10  various alternatives.  *Oklahoma City v. Tuttle*, 471 U.S. 808,

11  823, 105 S.Ct. 2427 (1985).  A custom is a practice or usage so

12  frequent and widespread as to have the force of law.  *Bryan*

13  *County v. Brown*, 520 U.S. 397, 404 (1997).

14       16.  A public entity cannot be directly liable under 42

15  U.S.C. § 1983 for a policy it lacks the power to make, control or

16  correct.  *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir.

17  1994) ("[a] municipality cannot be liable for [official] conduct

18  it lacks the power to require, control, or remedy, even if that

19  conduct parallels or appears entangled with the desires of the

20  municipality").

21       17.  California counties have no inherent powers and may

22  exercise through the board of supervisors only those powers

23  expressly granted by the State Constitution or by statute.  *Hicks*

24  *v. Board of Supervisors*, (1977) 69 Cal.App.3d 228, 242.  The

25  question then becomes, how can the County, or the Board members

26  individually, be directly liable for exercising, or failing to

27  exercise, a power that they are prohibited by law from

28  exercising.  *Monell* instructs that Defendants County and Board of

Supervisors can only be liable under 42 U.S.C. § 1983 for their own unlawful conduct.  Counties are unable to control a sheriff or the sheriff's policies, and a sheriff or the State Attorney General would be entitled to enjoin any attempt to directly, or indirectly, exercise control in this area.  Thus, Plaintiff cannot sustain his burden to show that the County has policymaking authority or control over the precise function at issue.

18.  First, it is the State Legislature that defines who may use force and the amount of force that may be used.  The power to define a sheriff's duties belongs exclusively to the Legislature.  Cal. Const., Art. XI, § 1.  Second, it is the State that funds training, and a State commission, the Commission on Peace Officer Training, that sets and promulgates training standards.  Penal Code §§ 13500-13519.8.  Third, it is the State Attorney general who alone has power to ensure that sheriffs comply with federal and state standards for use of force.  The State Attorney General has exclusive constitutional and statutory authority to direct the sheriff if there is any deficiency in how the sheriff's function is carried out.  Cal. Const., Art. V, § 13; Government Code § 12560 and Government Code § 12561.

19.  In contrast, a county may not direct or control a sheriff, who is an elected official, either directly or indirectly, in the manner in which the sheriff's statutory duties are performed.  *Connolly v. County of Orange*, (1992) 1 Cal.4th 1105, 1113, fn.9; *Hicks v. Board of Supervisors*, (1977) 69 Cal.App.3d 228, 242 (holding that a county may not control or direct the manner in which a sheriff expends county funds);

Government Code § 25303 (counties, through their governing body, may not direct or control "independent and statutorily designated investigative and prosecutorial functions of the sheriff . . ."); *Pitts v. County of Kern*, (1998) 17 Cal.4th 340, 358-59 (observing that counties have no law enforcement powers or duties).

20.   The Legislature has exercised this power generally by setting forth the sheriff's duties in Government Code §§ 26600-26778.   The State Legislature, not the County, also controls and regulates who may become a peace officer, the standards for becoming a peace officer and the powers of a peace officer (including the degree of force that may be used).   Penal Code §§ 830-851.85.   The Legislature has given to sheriffs exclusive authority to appoint their deputies.   Government Code §§ 1190-1194.

IV.   Orders Re Amendments To Pleadings.

1.   The Plaintiff does not anticipate filing any amendments to the pleadings at this time.   Plaintiff does reserve the right to amend pleadings in the event discovery reveals the existence of additional necessary Defendants.

2.   The Defendants, Does 1-100, inclusive, are DISMISSED WITHOUT PREJUDICE on the understanding that Plaintiff is fully reserving the right to amend.

3.   Defendants do not anticipate amending the pleadings unless Plaintiff seeks to amend the complaint.

V.   Factual Summary.

A.   Admitted Facts Which Are Deemed Proven Without Further Proceedings.

1.   The Kern County Sheriff's Department is, and at

23

1   all times relevant to the complaint was, a law enforcement agency

2   organized under the laws of the State of California.

3           2.   Sheriff Mack Wimbish was at all relevant times

4   employed by the County of Kern as the Sheriff of the Kern County

5   Sheriff's Department.  In that position, Sheriff Mack Wimbish

6   acted within the course and scope of his employment and under

7   color of law.

8           3.   At all relevant times, Deputy James Newell was

9   employed by the Kern County Sheriff's Department and the County

10  of Kern, and acted as a Sheriff's Deputy for the Kern County

11  Sheriff's Department.  In that position, Deputy James Newell

12  acted within the course and scope of his employment and under

13  color of law.

14          4.   On or about December 20, 2004, Deputy James Newell

15  conducted a traffic stop on the vehicle being operated by

16  Plaintiff Daniel Ream.

17          5.   Thereafter, and on or about December 20, 2004,

18  Deputy James Newell placed handcuffs on Plaintiff Daniel Ream.

19          6.   Plaintiff was placed under arrest and transported

20  to a Kern County Sheriff's substation at Lake Isabella.

21      B.   Contested Facts.

22          1.   All remaining facts are contested.

23  VI.  Legal Issues.

24      A.   Uncontested.

25          1.   Jurisdiction exists under 28 U.S.C. §§ 1331 and

26  1343.  Jurisdiction over supplemental state law claims is invoked

27  under 28 U.S.C. § 1367.

28          2.   Venue is proper under 28 U.S.C. § 1391(b).

24

1          3.    As to supplemental claims, the parties agree that

2    the substantive law of the State of California provides the rule

3    of decision.

4        B.    Contested.

5          1.    Whether there was a violation of the Plaintiff's

6    Fourth Amendment right.

7          2.    Whether the traffic stop at issue was legally

8    justified.

9          3.    Whether Plaintiff's arrest was legally justified.

10         4.    Whether the force used during the traffic stop at

11   issue was legally justified.

12         5.    Whether Deputy James Newell is entitled to

13   qualified immunity in that his conduct was objectively reasonable

14   at the time of the events alleged in the complaint to have

15   occurred in light of clearly established law.

16         6.    Whether the County of Kern and/or Kern County

17   Sheriff's Department are immune from liability as to the state

18   law torts.

19         7.    All other legal issues not otherwise enumerated

20   within the Joint Scheduling Conference Statement.

21         8.    Whether any Defendant used excessive force.

22         9.    Whether the Sheriff of Kern County is entitled to

23   absolute immunity.

24         10.   Whether the Sheriff can be individually liable

25   under the Civil Rights law.

26         11.   Whether the County can be liable under any theory.

27         12.   Whether and to what extent any vicarious liability

28   for supervisors and the Sheriff exist under State law.

                                25

1          13.   Whether and to what extent the Kern County

2    Sheriff's Department is a potentially liable Defendant under

3    vicarious liability or any other theory.

4    VII. Consent to Magistrate Judge Jurisdiction.

5          1.   The parties have consented to transfer the case to the

6    Magistrate Judge for all purposes, including trial.   The case

7    shall, therefore, be transferred to Magistrate Judge Teresa A.

8    Goldner and the new case number that should be typed on all

9    future pleadings in this case is: 1:05–cv-1576 TAG.

10   VIII.     Corporate Identification Statement.

11         1.   Any nongovernmental corporate party to any action in

12   this court shall file a statement identifying all its parent

13   corporations and listing any entity that owns 10% or more of the

14   party's equity securities.   A party shall file the statement with

15   its initial pleading filed in this court and shall supplement the

16   statement within a reasonable time of any change in the

17   information.

18   IX.  Discovery Plan and Cut-Off Date.

19         1.   The parties are ordered to complete all discovery on

20   or before January 29, 2007.

21         2.   The parties are directed to disclose all expert

22   witnesses, in writing, on or before November 29, 2006.   Any

23   supplemental expert disclosures will be made on or before

24   December 29, 2006.   The parties will comply with the provisions

25   of Federal Rule of Civil Procedure 26(a)(2) regarding their

26   expert designations.   Local Rule 16-240(a) notwithstanding, the

27   written designation of experts shall be made pursuant to F. R.

28   Civ. P. Rule 26(a)(2), (A) and (B) and shall include all

26

1  information required thereunder.  Failure to designate experts in

2  compliance with this order may result in the Court excluding the

3  testimony or other evidence offered through such experts that are

4  not disclosed pursuant to this order.

5      3.   The provisions of F. R. Civ. P. 26(b)(4) shall

6  apply to all discovery relating to experts and their opinions.

7  Experts may be fully prepared to be examined on all subjects and

8  opinions included in the designation.  Failure to comply will

9  result in the imposition of sanctions.

10  X.   Pre-Trial Motion Schedule.

11     1.   All Non-Dispositive Pre-Trial Motions, including any

12  discovery motions, will be filed on or before February 15, 2007,

13  and heard on March 19, 2007, at 9:00 a.m. before Magistrate Judge

14  Teresa A. Goldner in Bakersfield, California.

15     2.   In scheduling such motions, the Magistrate

16  Judge may grant applications for an order shortening time

17  pursuant to Local Rule 142(d).  However, if counsel does not

18  obtain an order shortening time, the notice of motion must comply

19  with Local Rule 251.

20     3.   All Dispositive Pre-Trial Motions are to be

21  filed no later than February 28, 2007, and will be heard on April

22  2, 2007, at 9:00 a.m. before the Honorable Teresa A. Goldner,

23  United States Magistrate Judge, in Bakersfield, California.  In

24  scheduling such motions, counsel shall comply with Local Rule

25  230.

26  XI.  Pre-Trial Conference Date.

27     1.   May 16, 2007, at 10:00 a.m. in Bakersfield, California,

28  before the Honorable Teresa A. Goldner, United States Magistrate

1   Judge.

2        2.    The parties are ordered to file a Joint Pre-
3   Trial Statement pursuant to Local Rule 281(a)(2).

4        3.    Counsel's attention is directed to Rules 281
5   and 282 of the Local Rules of Practice for the Eastern District
6   of California, as to the obligations of counsel in preparing for
7   the pre-trial conference.  The Court will insist upon strict
8   compliance with those rules.

9   XII. Trial Date.

10       1.    June 26, 2007, at the hour of 9:00 a.m. in Bakersfield,
11  California, before the Honorable Teresa A. Goldner, United States
12  Magistrate Judge.

13       2.    This is a jury trial.

14       3.    Counsels' Estimate Of Trial Time:

15            a.    7 days.

16       4.    Counsels' attention is directed to Local Rules
17  of Practice for the Eastern District of California, Rule 285.

18  XIII.      Settlement Conference.

19       1.    A Settlement Conference is scheduled for February 8,
20  2007, at 9:00 a.m. in Courtroom 8, 6th Floor, Fresno, California,
21  before the Honorable Lawrence J. O'Neill, United States
22  Magistrate Judge.

23       2.    Unless otherwise permitted in advance by the
24  Court, the attorneys who will try the case shall appear at the
25  Settlement Conference with the parties and the person or persons
26  having full authority to negotiate and settle the case on any
27  terms at the conference.

28       3.    Permission for a party [not attorney] to attend

1  by telephone may be granted upon request, by letter, with a copy

2  to the other parties, if the party [not attorney] lives and works

3  outside the Eastern District of California, and attendance in

4  person would constitute a hardship.   If telephone attendance is

5  allowed, the party must be immediately available throughout the

6  conference until excused regardless of time zone differences.

7  Any other special arrangements desired in cases where settlement

8  authority rests with a governing body, shall also be proposed in

9  advance by letter copied to all other parties.

10       4.   Confidential Settlement Conference Statement.

11 At least five (5) days prior to the Settlement Conference the

12 parties shall submit, directly to the Magistrate Judge's

13 chambers, a confidential settlement conference statement.   The

14 statement should not be filed with the Clerk of the Court nor

15 served on any other party.   Each statement shall be clearly

16 marked "confidential" with the date and time of the Settlement

17 Conference indicated prominently thereon.   Counsel are urged to

18 request the return of their statements if settlement is not

19 achieved and if such a request is not made the Court will dispose

20 of the statement.

21       5.   The Confidential Settlement Conference

22 Statement shall include the following:

23            a.   A brief statement of the facts of the

24 case.

25            b.   A brief statement of the claims and

26 defenses, i.e., statutory or other grounds upon which the claims

27 are founded; a forthright evaluation of the parties' likelihood

28 of prevailing on the claims and defenses; and a description of

1  the major issues in dispute.

2          c.    A summary of the proceedings to date.

3          d.    An estimate of the cost and time to be

4  expended for further discovery, pre-trial and trial.

5          e.    The relief sought.

6          f.    The parties' position on settlement,

7  including present demands and offers and a history of past

8  settlement discussions, offers and demands.

9  XIV. Request For Bifurcation, Appointment Of Special Master,

10 Or Other Techniques To Shorten Trial.

11     1.    The parties do not agree as to bifurcation of

12 liability and *Monell* issues.  The parties do agree that the

13 amount, if any, of punitive damages may be tried in a second

14 phase before the same jury in a continuous trial.

15 XV.  Related Matters Pending.

16     1.    There are no related matters.

17 XVI. Compliance With Federal Procedure.

18     1.    The Court requires compliance with the Federal

19 Rules of Civil Procedure and the Local Rules of Practice for the

20 Eastern District of California.  To aid the court in the

21 efficient administration of this case, all counsel are directed

22 to familiarize themselves with the Federal Rules of Civil

23 Procedure and the Local Rules of Practice of the Eastern District

24 of California, and keep abreast of any amendments thereto.

25 XVII.     Effect Of This Order.

26     1.    The foregoing order represents the best

27 estimate of the court and counsel as to the agenda most suitable

28 to bring this case to resolution.  The trial date reserved is

30

1  specifically reserved for this case.   If the parties determine at

2  any time that the schedule outlined in this order cannot be met,

3  counsel are ordered to notify the court immediately of that fact

4  so that adjustments may be made, either by stipulation or by

5  subsequent scheduling conference.

6          2.     Stipulations extending the deadlines contained

7  herein will not be considered unless they are accompanied by

8  affidavits or declarations, and where appropriate attached

9  exhibits, which establish good cause for granting the relief

10 requested.

11         3.     Failure to comply with this order may result in

12 the imposition of sanctions.

14 IT IS SO ORDERED.

15 **Dated:   April 6, 2006**                    **/s/ Oliver W. Wanger**
   emm0d6                              UNITED STATES DISTRICT JUDGE